UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at KNOXVILLE

TIMOTHY W. WHEELER,                )
                                   )
        *Plaintiff,*               )
                                   )        No. 3:16-cv-108
v.                                 )
                                   )        Judge Collier
KNOX COUNTY, TENNESSEE and         )
CATHERINE F. SHANKS, in her        )
official capacity,                 )
                                   )
        *Defendant.*               )

## M E M O R A N D U M

Before the Court is the motion for summary judgment of Defendant, Knox County, Tennessee,[1] on the claims of Plaintiff, Timothy Wheeler, for violations of the First and Fourteenth Amendments of the United States Constitution, violations of various federal employment and disability laws, and violations Tennessee employment laws. (Doc. 43.) Plaintiff filed a timely response (Doc. 66), and Defendant replied (Doc. 69.) For the following reasons, the Court will **GRANT IN PART and DENY IN PART** Defendant's motion for summary judgment (Doc. 43). The Court will **GRANT** Defendant's motion for summary judgment as to Plaintiff's retaliatory discharge claims under the First and Fourteenth Amendments to the United States Constitution and under Tennessee common law. The Court will also **GRANT** Defendant's motion on Plaintiff's disability discrimination claim in violation of the Americans with Disabilities Act Amendments Act (the "ADAAA"). The Court will **DENY** Defendant's motion for summary

---

[1] An action against a municipal or county officer in an official capacity is treated as an action against the governmental entity. *Hafer v. Melo*, 502 U.S. 21, 25 (1991). Thus, there is only one Defendant at this stage of this case, as a claim against Catherine Shanks in her individual capacity has been dismissed. (Doc. 42.)

judgment as to Plaintiff's claims for retaliatory discharge under the Tennessee Public Protection Act (the "TPPA") and for interference and retaliation under the Family and Medical Leave Act (the "FMLA").

## I.     BACKGROUND

Plaintiff was hired as a deputy clerk in the Knox County Circuit Court Clerk's Office ("Clerk's Office") in December, 2001.[2]  He was hired by Cathy Shanks, who was the elected Knox County Circuit Court Clerk.  In December 2006, he was promoted to Chief Deputy Clerk.  In that role, Plaintiff was second in command at the Clerk's Office—he filled in for Shanks when she was unavailable and he went to meetings for her.  He was also aware of employment processes the Clerk's Office followed.

As part of his job, Plaintiff collected time sheets from all of the employees at the Clerk's Office.  In January 2015, Plaintiff noticed that timesheets for one employee, Ray Hill, were missing.  He called a woman named Wendy Norris to inform her of the missing timesheets, but she replied that she had not seen Hill in weeks, that his timesheets were in his locked office, and that Hill had the only key to his office.  Plaintiff told Norris he needed to relay this information to Shanks.  Ten minutes later, he received a faxed copy of Hill's timesheet.  For the weeks the timesheet covered, every day was filled in with time with the exception of the date Plaintiff called about the timesheet.  Plaintiff told Shanks about the timesheet and told her it was illegal to sign off on timesheets for a person who did not actually work the hours stated therein.  During this conversation, Plaintiff used the term "ghost employee."  Shanks told Plaintiff to mind his own business, and that his role was to collect timesheets and not worry about payroll.  After that

---

[2] Unless otherwise noted, where the facts set out by the parties are disputed, the Court has viewed the evidence in the light most favorable to Plaintiff and drawn all reasonable inferences in his favor.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

conversation, Plaintiff was relieved of his duties to collect timesheets. Though Plaintiff and Shanks were very close before the conversation, Shanks stopped talking to Plaintiff at work and stopped socializing with him.

On March 5, 2015, Plaintiff was diagnosed with three hernias which required surgery and between six to eight weeks of recovery. Plaintiff believed the hernias to be work related, as he had been engaged in physically moving files and furniture as part of his job duties. Plaintiff planned to schedule his surgery through worker's compensation, so he did not immediately schedule his surgery.

On March 8, 2015, Plaintiff contacted Human Resources Clerk Randy Kenner, telling him about his hernias, his need for surgery, and his need for six to eight weeks of leave for recovery after the surgery. That night, Kenner filled out a Risk Management Supervisor's Report. The next day, Plaintiff met with Kenner and signed an "Incident Data Form," an "Employee Notice of Injury Report," a Tennessee Department of Labor "Medical Waiver and Consent Form," and authorization forms giving Knox County access to his medical records.

On March 13, 2015, Plaintiff received a call from an attorney in the Knox County Law Department. The attorney told him he would receive a letter denying his workers' compensation claim. Plaintiff then scheduled his surgery for March 25, 2015. On March 17, Plaintiff submitted a "Leave Request Form," stating he would need to come in late on March 19, 2015 and leave by noon on March 24, 2015 for his surgery. On March 18, 2015, he received a letter denying his worker's compensation claim. On March 20, Plaintiff submitted a second "Leave Request Form" stating his post-operative appointment would take place on April 14, 2015, and that he would find out when he could return to work at that appointment.

Plaintiff returned to work following his surgery on April 15, 2015. When he arrived to work the next day, April 16, 2015, there was another employee in his office. All of his belongings, business and personal, were sitting outside of his now-prior office. Shanks's assistant, Donna Riley, told Plaintiff that Shanks wanted him to move to an office in the Old Courthouse and work as a General Sessions clerk. Plaintiff did not have an office at the Old Courthouse, nor did he have a phone, computer, or access to email there. Plaintiff texted Shanks, inquiring how he was to work under such conditions. Shanks told Plaintiff to use her office, but Shanks's office only had a desk. Shanks told Plaintiff to call Norris and have her order new furniture, but Norris told Plaintiff there was no money in the budget to do so.

Plaintiff made an appointment with the Knox County Human Resources Manager, Mark Jones, on the afternoon of the same day, April 16, 2015. Plaintiff told Jones about his conversation with Shanks regarding Hill, the alleged "ghost employee." Plaintiff stated that since his conversation with Shanks, filing for worker's compensation, and taking FMLA leave, he felt he was being retaliated against. Jones stated he needed to give the information Plaintiff relayed to him to the law department. Plaintiff told Jones that Shanks had friends in the law department, and that he believed if Shanks found out he went to Human Resources about her, he would be fired. Jones assured Plaintiff he would be protected by a whistleblower statute.

On April 22, 2015, Plaintiff received a text from Shanks which stated "go ahead and take off until your cruise. We've got it covered and OBVIOUSLY you need the rest." Plaintiff was scheduled to be off work from April 25 until May 11, 2015, for a vacation to Italy with a cruise component.

On April 24, 2015, Plaintiff received a call from Kenner. Kenner said something was about to happen, and he did not think it was happening in the right way. He said he was giving Plaintiff

a "heads up" but did not tell Plaintiff he was going to be fired. That evening, Plaintiff learned from the 5:00 PM news that he was fired from the Clerk's Office.

On April 29, 2015, Plaintiff received a letter from Shanks stating he was terminated due to ongoing reorganization of the Clerk's Office.

On March 7, 2016, Plaintiff brought the present lawsuit alleging five different counts: (1) retaliatory discharge in violation of the First and Fourteenth Amendments to the U.S. Constitution; (2) retaliatory discharge in violation of the TPPA; (3) interference in violation of the FMLA; (4) retaliatory discharge in violation of the FMLA; (5) disability discrimination in violation of the ADAAA; and (6) retaliatory discharge in violation of Tennessee common law. (Doc. 1.)

## II.    STANDARD OF REVIEW

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Leary v. Daeschner*, 349 F.3d 888, 897 (6th Cir. 2003). A factual dispute is "material" only if its resolution might affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court should view the evidence, including all reasonable inferences, in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis Inc.*, 253 F.3d 900, 907 (6th Cir. 2001).

To survive a motion for summary judgment, "the non-moving party must go beyond the pleadings and come forward with specific facts to demonstrate that there is a genuine issue for trial." *Chao v. Hall Holding Co., Inc.*, 285 F.3d 415, 424 (6th Cir. 2002). Indeed, a "[plaintiff] is

not entitled to a trial on the basis of mere allegations." *Smith v. City of Chattanooga*, No. 1:08-cv-63, 2009 WL 3762961, at *2-3 (E.D. Tenn. Nov. 4, 2009) (explaining the court must determine whether "the record contains sufficient facts and admissible evidence from which a rational jury could reasonably find in favor of [the] plaintiff"). In addition, should the non-moving party fail to provide evidence to support an essential element of its case, the movant can meet its burden of demonstrating no genuine issue of material fact exists by pointing out such failure to the court. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989). Each party must properly support its assertions of fact and its responses to another party's assertions of fact. Fed. R. Civ. P. 56(e).

At summary judgment, the Court's role is limited to determining whether the case contains sufficient evidence from which a jury could reasonably find for the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). If the Court concludes a fair-minded jury could not return a verdict in favor of the non-movant based on the record, the Court should grant summary judgment. *Id.* at 251-52; *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

## III.   DISCUSSION

### A.   Retaliatory Discharge in Violation of the First and Fourteenth Amendments to the United States Constitution and Disability Discrimination in Violation of the ADAAA

Defendant moved for summary judgment, arguing in a separate memorandum why Knox County should be entitled to judgment as a matter of law on Count One, retaliatory discharge in violation of the First and Fourteenth Amendments to the United States Constitution (Doc. 46 at 10-21), and Count Five, disability discrimination in violation of the ADAAA (Doc. 46 at 21-25), of Plaintiff's complaint (Doc. 1). In footnote one of Plaintiff's response to Defendant's motion

for summary judgment, Plaintiff consents to dismissal of those claims. (Doc. 66 at 1 n.1.) Accordingly, Counts One and Five will be **DISMISSED** with prejudice.

### B. Retaliatory Discharge in Violation of Tennessee Common Law

Defendant argues summary judgment is appropriate as to Count Six, retaliatory discharge in violation of Tennessee common law, because retaliatory discharge claims under Tennessee common law are only available to private-sector employees. (Doc. 46 at 9.)

Under Tennessee law, "the common-law retaliatory discharge claim is available only to private-sector employees." *Williams v. City of Burns*, 465 S.W.3d 96, 110-11 (Tenn. 2015). While it appears the original rationale for this rule was based on sovereign immunity, *see Williams v. Williamson Cty. Bd. of Educ.*, 890 S.W.2d 788, 790 (Tenn. Ct. App. 1994) ("sovereign immunity is a complete defense for a governmental entity to a retaliatory discharge claim"), the Tennessee Supreme Court later applied this rule to city employees as well. Cities and counties are generally not protected by the doctrine of sovereign immunity like the states are. *See, e.g.*, *N. Ins. Co. of N.Y. v. Chatham Cty., Ga.*, 547 U.S. 189, 193 (2006) ("this Court has repeatedly refused to extend sovereign immunity to counties"). Regardless, the rule now stands that public employees, even of cities or counties, cannot bring common-law retaliatory discharge claims against their government employer. *Williams*, 465 S.W.3d at 110-11.

Here, Plaintiff began working for the Knox County Court Clerk's Office in December 2001 as a deputy clerk. (Doc. 66-2 [Wheeler Dep.] at 12.) In 2006, Defendant promoted Plaintiff to the position of Chief Deputy Clerk. (*Id.*) At all relevant times, Plaintiff was a public employee who now seeks damages from his government employer, Knox County. Because a common law retaliatory discharge claim is only available to private-sector employees, Count Six will be **DISMISSED** with prejudice.

**C.      Retaliatory Discharge under the Tennessee Public Protection Act**

The TPPA provides:

> (b) No employee shall be discharged or terminated solely for refusing to participate in, or for refusing to remain silent about, illegal activities.
> (c)(1) Any employee terminated in violation of subsection (b) shall have a cause of action against the employer for retaliatory discharge and any other damages to which the employee may be entitled, subject to the limitations set out in § 4-21-313.

Tenn. Code Ann. § 50-1-304(b)-(c)(1).  Unlike a retaliation claim under Tennessee common law, the TPPA extends protection to public employees.  *Id.* at 110.

Claims under the TPPA are assessed under the *McDonnell Douglas* burden-shifting framework.  *Levan v. Sears, Roebuck & Co.*, 984 F. Supp. 2d 855, 870 (E.D. Tenn. 2013); *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  "If a plaintiff is able to make a prima facie showing of retaliatory discharge, the burden shifts to the employer to articulate a legitimate, non-pretextual reason for termination."  *Hugo v. Millennium Labs., Inc.*, 590 F. App'x 541, 544 (6th Cir. 2014) (citing Tenn. Code Ann. § 50–1–304(g)).  "If a legitimate reason is articulated, 'the burden shifts to the plaintiff to demonstrate that the reason given by the defendant was not the true reason for the plaintiff's discharge and that the stated reason was a pretext for unlawful retaliation.'"  *Id.*

**1.      Prima Facie Case**

In order to establish a prima facie case under the TPPA, four elements must be proved:

> (1) the plaintiff was an employee of the defendant;
> (2) the plaintiff refused to participate in or remain silent about illegal activity;
> (3) the defendant employer discharged or terminated the plaintiff's employment; and
> (4) the defendant terminated the plaintiff's employment solely for the plaintiff's refusal to participate in or remain silent about the illegal activity.

*Williams*, 465 S.W.3d at 111.

Here, the parties dispute the second and fourth elements of Plaintiff's prima facie case.

### a. Plaintiff refused to participate in or remain silent about illegal activity

Element two requires a plaintiff to show a reasonable belief their employer was engaging in an illegal activity. Defendant argues summary judgment is appropriate because Plaintiff does not identify a law or policy violated. (Doc. 46 at 31.) Plaintiff responds that the activities Plaintiff reported, if true, would amount to knowing presentation of a false claim, among other crimes, such as theft. (Doc. 66 at 23.)

"The TPPA defines 'illegal activities' as 'activities that are in violation of the criminal or civil code of this state [of Tennessee] or the United States or any regulation intended to protect the public health, safety or welfare.'" *Epperson v. Res. Healthcare of Am., Inc.*, 566 F. App'x 433, 436 (6th Cir. 2014) (citing Tenn. Code Ann. § 50–1–304(a)(3)). The TPPA's protection extends to employees who reasonably suspect their employer of engaging in illegal activity. *Hastings v. Manheim Auto. Fin. Servs., Inc.*, No. 3:08CV0147, 2008 WL 11388120, at *6 (M.D. Tenn. Apr. 7, 2008), *aff'd sub nom. Hastings v. Remarketing Sols., Inc.*, 316 F. App'x 488 (6th Cir. 2009). "If there is any doubt regarding whether a defendant's actions were illegal or whether a plaintiff's belief in the alleged illegality was reasonable, summary judgment is inappropriate." *Epperson*, 566 F. App'x at 436. The illegal activity identified must also implicate important public policy concerns. *Hastings*, 2008 WL 11388120, at *6.

Here, while Plaintiff did not cite a specific criminal statute in his complaint, Plaintiff provided adequate notice of illegal activity by alleging facts regarding Plaintiff's "belief that Shanks was knowingly continuing to pay full-time wages to a former employee and friend of hers who rarely, if ever, reported to work, i.e., a 'ghost employee.'" (Doc. 1 ¶ 21.) *See also Carter v. Ford Motor Co.*, 561 F.3d 562, 565 (6th Cir. 2009) (observing the key issue in a challenge to the

sufficiency of a pleading is notice). It was reasonable for Plaintiff to suspect this activity was underway because Plaintiff was responsible for collecting timesheets, and when he sought to collect Hill's timesheet, he heard from Norris that she had not seen Hill in weeks and that his timesheets were in his locked office. Ten minutes later, Plaintiff received a faxed copy of Hill's timesheet with every day filled in with time except the date Plaintiff inquired about the timesheet.

The submitting of false time sheets for pay from a government entity violates both civil and criminal laws. *See* Tenn. Code Ann. § 4-18-103 (the Tennessee False Claims Act prohibits knowingly presenting to any political subdivision a false claim for payment or approval); *Rogers v. Harper Vehicles, LLC*, No. 3:05-CV-533, 2006 WL 2708322, at *1 (E.D. Tenn. Sept. 19, 2006) (padding of time sheets supported civil claims for conversion and fraud); *State v. Malone*, No. 01C019706-CC-00234, 1998 WL 427387, at *1 (Tenn. Crim. App. July 30, 1998) (submission of false time sheets resulted in indictment for theft and forgery). This behavior also touches on important public policy concerns, such as the legitimate expenditure of government funds and the honesty and integrity of publically elected officials. Thus, a reasonable jury could find Plaintiff has presented sufficient evidence as to element two of his prima facie case.

> **b.  Defendant terminated plaintiff's employment solely for the Plaintiff's refusal to participate in or remain silent about illegal activity**

Element four presents an issue of causation: the Court must ask whether there is a material dispute of fact as to whether Plaintiff was terminated solely because of his whistleblowing. Defendant argues summary judgment is appropriate because Shanks did not know about Plaintiff's complaints to Mark Jones on April 16, 2015, and thus could not retaliate against Plaintiff because of those complaints. (Doc. 46 at 31.) Plaintiff responds that retaliatory cause for Plaintiff's firing can be established because Jones admitted he relayed the information Plaintiff gave him to persons

in the law department, and it is Plaintiff's earnest belief such information was then relayed from the law department to Shanks. (Doc. 66 at 24.)

The TPPA is more stringent than Tennessee common law in that it requires a plaintiff to prove that retaliation was caused *solely* by the plaintiff's protected conduct. *Id.* at 110-11 (citing *Sykes v. Chattanooga Hous. Auth.*, 343 S.W.3d 18, 26-27 (Tenn. 2011)); *Darnall v. A+ Homecare, Inc.*, No. 01-A-01-9801-CR-0034, 1999 WL 346225, at *8 (Tenn. Ct. App. June 2, 1999) ("The General Assembly's choice of the term 'solely' means that an employee can prevail with a Tenn. Code Ann. § 50-1-304 claim only if he or she can prove that his or her refusal to participate in or to remain silent about illegal activities was the only reason for the termination."). "Evidence of causation requires . . . direct evidence or compelling circumstantial evidence." *Smith v. C.R. Bard, Inc.*, 730 F. Supp. 2d 783, 800 (M.D. Tenn. 2010). "The plaintiff's mere belief or understanding of why he was dismissed, is not sufficient to create a genuine issue of material fact." *Id.*

Here, Plaintiff alleges he was discharged "solely because he spoke out against Defendant Shanks's illegal activities by complaining as he did to the human resources department and county law director's office." (Doc. 1.) On April 16, 2015, Plaintiff met with the Knox County Human Resources Manager, Mark Jones, to discuss Hill. (*Id.* at 37.) As to his discussion with Jones, Plaintiff states,

> We discussed about the ghost employee. He said I would be protected under the Whistleblower's Act, that Tennessee recognized that, that I was up there more as a concerned citizen, not necessarily employee, that I had found this out, and that I had reported it to the clerk. And since reporting it to the clerk, I had been stripped of certain duties that I had done for the years I'd been the chief deputy, and now my office had been occupied. I had no access to my computer, voicemail or anything. And he said he was going to go over to the law department. I warned him to be extremely careful, that the clerk came out of the law department, and that her husband's ex-wife worked in the law department, and to tell one person over there, it would go through the building like wildfire. And he told me when he went to the law department that that would be confidential between him and who he spoke with and that it would not be let out.

(*Id.* at 40-41.)  Plaintiff states he has "no idea" if, for a fact, somebody in the Human Resources department told Shanks about Plaintiff's meeting with Mark Jones.  (*Id.* at 42.)  Plaintiff also does not know with whom Jones met at the law office.  (*Id.*)  Plaintiff alleges Jones admits he did relay the information Plaintiff gave him on April 16 to persons in the law office.  (Doc. 66 at 24.)[3]  Clerk Shanks later terminated Plaintiff on April 24, 2015, citing her reason for termination "as part of an ongoing reorganization of the office."  (Doc. 66-10 [Separation Notice]).

Plaintiff has not presented evidence indicating Shanks knew Plaintiff met with Jones on April 16, 2015.  Plaintiff only references his "earnest belief" such information was relayed from the law department to Shanks.  (Doc. 66 at 24.)  Shanks testifies in her deposition that she did not know Plaintiff went to Jones before she made the decision to terminate Plaintiff.  (*Id.*)  If Shanks did not know Plaintiff met with Jones, it follows that Shanks could not have terminated Plaintiff because of that meeting.  *Johnson v. BellSouth Telecomm., Inc.*, 512 F. App'x 566, 570 (6th Cir. 2013) (finding plaintiff did not present sufficient evidence of cause in speculating that employee who fired him knew about whistleblowing letter).  Thus, even viewing the evidence in his favor, Plaintiff has not shown direct evidence that Shanks terminated his employment for his meeting with Human Resources on April 16.

Plaintiff then argues "Plaintiff's complaints to Jones a few days before his termination should also not be viewed in isolation" because "Plaintiff first reported the potentially illegal activity to Shanks in January 2015."  (Doc. 66 at 24.)  Defendant responds arguing Plaintiff failed to disclose this alleged conversation until his deposition and post-deposition declaration, the declaration being signed the day Plaintiff's Response was filed.  (Doc. 69 at 7.)  Thus, Defendant

---

[3] Plaintiff's counsel cites Doc. 66-9 as Jones's deposition.  Instead, Wheeler's deposition is included at this exhibit as a duplicate.

contends Plaintiff's statement about reporting the activity to Shanks in January 2015 represents "a blatant attempt to create a sham issue of material fact" and that, accordingly, Plaintiff's testimony about his complaint to Shanks in January 2015 regarding a ghost employee should be stricken. (*Id*. at 7-8.)

Application of the sham affidavit doctrine is appropriate where a party files an affidavit that contradicts earlier, sworn testimony after a motion for summary judgment has been made. *France v. Lucas*, 836 F.3d 612, 622 (6th Cir. 2016). This is because "[i]f a party who has been examined at length [under oath] could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact." *Id.* (citing *Perma Research & Dev. Co. v. Singer Co.*, 410 F.2d 572, 578 (2d Cir. 1969)). Courts which have analyzed the sham affidavit doctrine have stressed that affidavits are more vulnerable to being questioned by a court because they do not have the same indications of reliability as deposition testimony. For instance, affidavits are usually drafted by counsel and do not provide an opportunity for cross examination. *See Jiminez v. All Am. Rathskeller, Inc.*, 503 F.3d 247, 253-54 (3d Cir. 2007).

The Court disagrees with Defendant's argument that Plaintiff's statement about discussing the ghost employee with Shanks in January 2015 is an attempt to create a sham issue of material fact. Defendant cites no case where an affidavit was struck which was *consistent with* a party's deposition testimony. There is less concern about sham, here, because Plaintiff's declaration[4] aligns with his deposition testimony. (*Compare* Doc. 66-9 [Wheeler Dep.] at 39-41 *with* Doc. 66-3 [Wheeler Dec.] ¶¶ 22-30). Since the Court acknowledges that "the sham affidavit rule 'should

---

[4] Under federal law, a sworn declaration may be used in the same manner, and has the same legal force, as an affidavit. *See* 28 U.S.C. § 1746; *El Bey v. Roop*, 530 F.3d 407, 414 (6th Cir. 2008).

be applied with caution' because it is in tension with the principal [sic] that the court is not to make credibility determinations when granting or denying summary judgment," the Court declines to apply that rule here. *Yeager v. Bowlin*, 693 F.3d 1076, 1080 (9th Cir. 2012).

Thus considering Plaintiff's declaration, as well as other relevant evidence before the Court, Plaintiff has met the high burden of presenting sufficient facts to show he was terminated solely due to his refusal to participate in or remain silent about illegal activity. First, Plaintiff's case is unlike cases such as *Hugo v. Millennium Labs, Inc.*, where the plaintiff was unable to point to any "facts suggesting that his alleged refusal to participate in illegal activities was even considered by" his employer. 590 F. App'x 541, 544 (6th Cir. 2014). Instead, Plaintiff has shown he reported potentially illegal activity to Shanks in January 2015. In doing so, he confronted the exact employee who ultimately fired him, alleging that she, herself, was engaging in illegal activity by signing off on false time sheets. Shanks told Plaintiff to mind his own business, and that his role was to collect time sheets and not worry about payroll. Though Plaintiff and Shanks were very close before the conversation, everything changed afterwards: Shanks stopped talking to Plaintiff at work and stopped socializing with him. Plaintiff was then stripped of his duty to collect time sheets, a duty directly related to the purported illegal activity at issue. Plaintiff continued to refuse to remain silent about the illegal activity, later discussing it with Jones at Human Resources, stating he believed he was being retaliated against for bringing up the illegality to Shanks. He was concerned he would be retaliated against further if Shanks found out that he met with Human Resources. Jones then stated Plaintiff would be protected by a whistleblower statute, thus indicating that he agreed Plaintiff may be subject to potential retaliation. Plaintiff was fired one week after the meeting with Jones. A reasonably jury could find this chain of circumstantial evidence to be "compelling." *Smith*, 730 F. Supp. 2d at 800; *see N. v. Chase Scientific Glass, Inc.*,

No. 3:06-CV-233, 2007 WL 3286803, at *10 (E.D. Tenn. Nov. 2, 2007). Thus, while Plaintiff has not presented direct evidence he was retaliated against specifically due to his meeting with Human Resources on April 16, 2015, he has presented compelling circumstantial evidence of a larger scheme of retaliation against him solely because of his protected activity.

Plaintiff has made a prima facie case under the TPPA. Accordingly, the next stages of the *McDonnell Douglas* burden-shifting framework must be assessed.

### 2. Reason for Discharge and Pretext

Defendant must articulate a legitimate, non-pretextual reason for Plaintiff's termination. *Hugo*, 590 F. App'x at 544.

Plaintiff's termination letter states he was terminated for ongoing reorganization of the Clerk's Office. (Doc. 66-10.) Shanks claims declining revenues made it difficult to pay salaries. (Doc. 66-1 [Shanks Dep.] at 77-78.) It is legitimate to terminate an at-will employee due to an inability to pay the employee.

"If a legitimate reason is articulated, 'the burden shifts to the plaintiff to demonstrate that the reason given by the defendant was not the true reason for the plaintiff's discharge and that the stated reason was a pretext for unlawful retaliation.'" *Hugo*, 590 F. App'x at 544.

"Pretext is a commonsense inquiry: did the employer fire the employee for the stated reason or not?" *Chen v. Dow Chem. Co.*, 580 F.3d 394, 402 n.4 (6th Cir. 2009). "This requires a court to ask whether the plaintiff has produced evidence that casts doubt on the employer's explanation, and, if so, how strong it is." *Id.* A plaintiff may establish pretext by showing that an employer's proffered reasons (1) have no basis in fact; (2) did not actually motivate the action; or (3) were insufficient to warrant the action. *Seeger v. Cincinnati Bell Tel. Co., LLC*, 681 F.3d 274, 285 (6th Cir. 2012). While temporal proximity cannot be the sole basis for a finding of pretext, suspicious

timing is a strong indicator of pretext when it is accompanied by other, independent evidence. *Bell v. Prefix, Inc.*, 321 F. App'x 423, 431 (6th Cir. 2009).

Here, Plaintiff states that, had there been an economic reorganization plan under consideration, he would have been involved with it and known about it due to his role as Chief Deputy Clerk in the Clerk's Office. Plaintiff knew of no such plan. (Doc. 66-2 [Wheeler Dep.] at 74-75.) He also states Shanks would always use the same reason in her termination letter when other employees were terminated—that the termination was due to reorganization. (*Id.*) Taken together, these facts constitute sufficient evidence demonstrating that the proffered reason Plaintiff was terminated was false and pretextual: A reasonable jury could find Plaintiff has shown that Defendant's proffered reason did not actually motivate the action of Plaintiff's termination. *Seeger*, 681 F.3d at 285.

Having completed an analysis under the entire *McDonnell Douglas* framework, the Court will **DENY** Defendant's motion for summary judgment on Count Two—retaliatory discharge in violation of the TPPA.

### D.  FMLA Interference and Retaliation

Section 102 of the FMLA, codified at 29 U.S.C. § 2612, provides that eligible employees are entitled to twelve workweeks of leave during any twelve-month period due to an employee's own serious health condition. 29 U.S.C. § 2612(a)(1). Section 105 of the FMLA, codified at 29 U.S.C. § 2615, prohibits covered employers from interfering with, restraining, or denying the exercise of their employees' rights under the statute. *Id.* § 2615(a)(1). The same section also prohibits an employer from discharging or in any other manner discriminating against an employee for opposing any practice made unlawful by the statute. *Id.* § 2615(b)(1). The Court of Appeals for the Sixth Circuit recognizes two distinct theories for recovery under the FMLA which stem

from these two provisions: (1) an "entitlement" or "interference" theory; and (2) a "retaliation" or "discrimination" theory. *Banks v. Bosh Rexroth Corp.*, 610 F. App'x 519, 523 (6th Cir. 2015). Plaintiff has brought claims under both.

## 1. FMLA Interference

FMLA interference claims are also assessed under the burden-shifting framework defined by *McDonnell Douglas v. Green*. *Mullendore v. City of Belding*, 872 F.3d 322, 327 (6th Cir. 2017); *see also McDonnell Douglas v. Green*, 411 U.S. 792 (1973).

### a. Prima Facie Case

To make a prima facie showing of FMLA interference, Plaintiff must demonstrate that: (1) he was an eligible employee; (2) Defendant was an employer as defined under the FMLA; (3) Plaintiff was entitled to leave under the FMLA; (4) Plaintiff gave his employer notice of his intention to take leave; and (5) Defendant denied Plaintiff FMLA benefits to which he was entitled. *See Cavin v. Honda of Am. Mfg., Inc.*, 346 F.3d 713, 719 (6th Cir. 2003). The central issue "is simply whether the employer provided its employee the entitlements set forth in the FMLA." *Arban v. W. Pub. Corp.*, 345 F.3d 390, 401 (6th Cir. 2003) (quoting *Hogens v. Gen. Dynamics Corp.*, 144 F.3d 151, 159 (1st Cir. 2003)). "If an employer interferes with the FMLA-created right to medical leave or to reinstatement following the leave, a violation has occurred." *Id.*

By failing to address them, Defendant appears to concede the first three elements: (1) Plaintiff was an eligible employee, (2) Defendant is subject to the FMLA, and (3) Plaintiff was entitled to FMLA leave. The parties otherwise dispute the fourth element—whether Plaintiff provided sufficient notice of his intention to take leave; as well as the fifth element—whether the employer denied the employee FMLA benefits to which he was entitled.

### 1.    Notice

Defendant argues summary judgment is appropriate as to Count Three because Plaintiff cannot establish he provided adequate notice of his intention to take FMLA leave in connection with his sick leave March 25, 2015 through April 15, 2015.  (Doc. 46 at 26.)  Plaintiff argues Defendant mischaracterizes when Plaintiff provided notice to his employer, and that Plaintiff followed the Clerk's Office's standard procedure when providing notice of his need to take FMLA leave.  (Doc. 66 at 16-20.)

When a need for FMLA leave is unforeseeable, pertinent regulations require an employee to give notice to his or her employer of the need for FMLA leave as soon as practicable under the facts and circumstances of his or her particular case.  29 C.F.R. § 825.303(a).  It "generally should be practicable for the employee to provide notice of leave that is unforeseeable within the time prescribed by the employer's usual and customary notice requirements applicable to such leave." *Id.*  "[A]n employee must comply with the employer's usual and customary notice and procedural requirements for requesting leave, absent unusual circumstances."  *Id.* § 825.303(c).  If the employee is seeking leave for the first time for a FMLA-qualifying reason, the employee need not expressly assert rights under the FMLA or mention the FMLA at all.  *Id.* § 825.303(b).

The Knox County Circuit Sessions & Juvenile Court Clerk Personnel Plan specifies:

> Applications for family medical leaves of absence must be submitted in writing. Applications should be submitted at least thirty (30) days before the leave is to commence, or as soon as possible if thirty (30) days notice is not possible. Appropriate forms must be submitted to the Human Resources Coordinator to initiate family medical leave and to return the employee to active status.  Employees requesting family medical leave should provide the coordinator with an appropriate medical certification.

(Doc. 25-1 at 21.)

In practice, however, evidence before the Court indicates the "usual and customary notice and procedural requirements for requesting leave" at the Knox County Circuit Court Clerk's Office look quite different. 29 C.F.R. § 825.303(c). Plaintiff declares that, generally, the employee would fill out a "Leave Request Form"; the request would go to Shanks for approval; and if the employee was going to be absent for more than three days, it was Shanks's policy to inform Human Resources Clerk Randy Kenner that further FMLA paperwork may be needed. (Doc. 66-3 [Wheeler Dec.] at ¶ 11.) Plaintiff also states "[i]t has never been the policy in the Clerk's Office that the employee had to request FMLA. It was the clerk who would put the employee on FMLA." (Doc. 66-2 [Wheeler Dep.] at 34.) And, "as Chief Deputy, it was never the employees request for FMLA. [sic] Whenever we had anyone put in for surgery, it was always Cathy instructed at the time, before Randy Kenner came in, that Jeffrey Gleason was to get FML [sic] papers to the employee, and then that was Randy's job to get them when they would be out any time over three days consecutive." (*Id.* at 32.)

All FMLA claims, during the time of Plaintiff's leave, were handled by Randy Kenner. (Doc. 66-1 [Shanks Dep.] at 48-49.) In response to a question as to whether an employee needed to request FMLA in order to get leave, Kenner states, "[t]hey have to or we can go to them and say 'Do you need this?'" (Doc. 66-4 [Kenner Dep.] at 22.) Kenner also states, "But if they have a surgery that's going to take some time that fell under FMLA, which we've had people do that, they would come to me. I would give them the paperwork they need to fill out. I would fill out what I need to fill out." (*Id.* at 19.)

Plaintiff's declaration states he learned from his doctor that he had three hernias on March 5, 2015. (Doc. 66-3 [Wheeler Dec.] ¶ 53-54.) He did not schedule surgery for the hernias immediately because he believed the hernias were work related and he planned to schedule the

surgery through worker's compensation. (*Id.*) Plaintiff states he told Kenner of his need for surgery Sunday, March 8, 2015 by texting or calling him, and that he would need to be out six to eight weeks. (*Id.* ¶ 57.) That night, Kenner filled out a Knox County Risk Management Supervisor's Report. (*Id.* ¶ 58.) The next day, Monday, March 9, Plaintiff visited Kenner and signed an "Incident Data" form as well as an "Employee Notice of Injury Report" and a Tennessee Department of Labor "Medical Waiver and Consent Form." (*Id.* ¶ 59-60.) On Friday, March 15, 2015, Plaintiff received a call from an attorney in the Knox County Law Department advising him that his workers' compensation claim would be denied, and the same day, Plaintiff called his doctor to schedule his surgery for March 25, 2015. (*Id.* ¶ 66-69.) On March 17, 2015, Plaintiff submitted a "Leave Request Form," notifying Shanks he would need to come in late on March 19 and leave March 24 at noon for surgery. (Doc. 25-1 at 16.) On March 20, 2015, Plaintiff submitted another "Leave Request Form" stating: "Go back to the surgeon 4/14/15 for postoperative appointment - will find out when I can return to work at that appointment." (*Id.* at 17.)

While an employee can be required to comply with an "employer's ordinary custom," "[n]othing in the regulation . . . suggests that an employee must adhere to an official written policy to provide sufficient notice under the FMLA when a different unwritten custom is typically followed." *Festerman v. Cty. of Wayne*, 611 F. App'x 310, 316-17 (6th Cir. 2015). It is difficult for the Court to determine whether Plaintiff complied with the Clerk's Office's "usual and customary notice and procedural requirements for requesting leave" when there is a factual dispute over what those requirements entailed. 29 C.F.R. § 825.303(c). This case is thus distinct from cases where the Sixth Circuit has required employees to strictly comply with their employer's official policy on requesting FMLA leave. *See Perry v. Am. Red Cross Blood Servs.*, 651 F. App'x 317, 328 (6th Cir. 2016) (finding employee failed to call specific individual to list absences as

FMLA leave); *Srouder v. Dana Light Axle Mfg., LLC*, 725 F.3d 608, 614-15 (6th Cir. 2013) (finding employee failed to follow call-in requirements for FMLA leave). *Compare with Cavin v. Honda of Am. Mfg. Inc.*, 346 F.3d 713 (6th Cir. 2003) (finding employee's oral notice sufficient in spite of internal employer procedural requirements) (superseded by revised regulation promulgated in 2009). In those cases, there was a clearly established method for the employee to request FMLA leave, but such does not appear to be the case here.

The Sixth Circuit has also recently observed that it has "characterized the sufficiency of this 'notice of intention' requirement as 'intensely factual,' depending on circumstances like the nature of the communications, the nature of the medical condition, and the exigencies." *Reeder v. Cty. of Wayne, Mich.*, 649 F. App'x 1001, 1006 (6th Cir. 2017). And "[t]he employee's burden in this regard 'is not heavy.'" *Id.*

Taking the evidence in the light most favorable to Plaintiff, he notified Randy Kenner, the sole person in the Clerk's Office responsible for FMLA, about his need for serious surgery three days after being diagnosed. He later submitted a Leave Request Form regarding the commencement of his leave for surgery three days after he scheduled his surgery. Because an employee is not required to expressly assert rights under the FMLA, or mention the FMLA at all, there is a material dispute of fact as to whether that form constituted an application in writing for FMLA leave. 29 C.F.R. § 825.303(b). Plaintiff states the Leave Request Form was what triggered the Clerk's Office FMLA leave process. And Plaintiff correctly observes, "to the extent Defendant claims Plaintiff was required to submit some other form—in addition to or in place of the Leave Request Form—Defendant has failed to produce the form, failed to cite the form, and failed to even indicate what that form is called or even what information it seeks." (Doc. 66 at 19.) In addition, Plaintiff could not schedule his surgery until his workers' compensation claim was

denied, so it was not possible for Plaintiff to submit his forms 30 days in advance. A reasonable jury could find that Plaintiff submitted these forms as soon as practicable, considering he did not receive an official rejection of his worker's compensation request until March 18, 2015. Because the sufficiency of a "notice of intention" is "intensely factual," the Court concludes Plaintiff has presented sufficient evidence to support a reasonable finding that he gave his employer adequate notice of his intention to take leave under the FMLA. *Reeder*, 694 F. App'x at 1006.[5]

## 2. Denial of Benefits

Defendant next argues Plaintiff cannot prove a prima facie case of FMLA interference because Plaintiff was not denied FMLA benefits, in so far as he was permitted to take any leave sought and was restored to his position of Chief Deputy Clerk upon his return. Plaintiff argues Defendant failed to restore him to his job or an equivalent job.

The Court first notes a factual dispute in the record as to whether Plaintiff ended up taking FMLA leave, or whether Plaintiff used sick leave not covered by the FMLA. Plaintiff states he took FMLA leave. (Doc. 66-3 [Wheeler Dec.] ¶ 97.) Shanks states Plaintiff did not take FMLA leave. (Doc. 66-1 [Shanks Dep.] at 122.) Because "[t]he evidence of the non-movant is to be believed," the Court will proceed on the assumption Plaintiff did take FMLA leave. *Anderson*, 477 U.S. at 255. The Court notes that a different analysis would apply than the below if Plaintiff

---

[5] The Court notes Plaintiff further cites to the individual notice requirement *for employers* to notify their employees of their eligibility to take FMLA leave. (Doc. 66 at 18.) That provision requires, "[w]hen an employee requests FMLA leave, or when the employer acquires knowledge that an employee's leave may be for an FMLA-qualifying reason, the employer must notify the employee of the employee's eligibility to take FMLA leave within five business days, absent extenuating circumstances." 29 C.F.R. § 825.300(b)(1). A reasonable jury could find interference with Plaintiff's exercise of his FMLA rights under this provision—as Plaintiff states he was never individually notified of his eligibility for FMLA leave—if Plaintiff was prejudiced by that failure (Doc. 66-2 [Wheeler Dep.] at 34). *Id.* § 825.300(e); *see also Lupyan v. Corinthian Colleges Inc.*, 761 F.3d 314, 318 (3d Cir. 2014).

did not take FMLA protected leave, but that finding would not necessarily entail that Plaintiff's rights under FMLA were not interfered with. *See, e.g.*, *Perry v. Jaguar of Troy*, 353 F.3d 510, 513-14 (6th Cir. 2003).

An employee returning from FMLA leave is entitled, on return from such leave, to (A) be restored to the position of employment held by the employee when the leave commenced; or to (B) be restored to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment. 29 U.S.C. § 2614 (a)(1)(A)-(B); *Millen v. Oxford Bank*, No. 17-2423, 2018 WL 4033734, at *6 (6th Cir. Aug. 23, 2018).

Plaintiff states when he came to work on April 16, 2015, one day after returning from FMLA leave, there was another employee in his office and all of his belongings, business and personal items, were sitting outside of his office. (Doc. 66-3 [Wheeler Dec.] ¶ 84-85.) Plaintiff was told by Shanks's assistant that Shanks wanted Plaintiff to move to an office in the Old Courthouse, and work as a General Sessions Clerk instead of serving as Chief Deputy Clerk. (*Id.* ¶ 86.) Plaintiff did not have an office at the Old Courthouse, nor did he have a phone, a computer, or access to email there. (*Id.* ¶ 87-88.) Plaintiff asked Shanks how he was to work under such conditions, after which Shanks told him to work in her office there. (*Id.* ¶ 90.) Shanks's office only had a desk. (*Id.* ¶ 91.) Shanks told Plaintiff to call Wendy Norris and have her order Plaintiff furniture, but Norris told him there was no money in the budget. (*Id.* ¶ 92-93.) On the other hand, Shanks states Plaintiff resumed his duties as Chief Deputy Clerk from the General Sessions Court Clerk's office with the same pay and benefits as prior to taking his sick leave. (Doc. 25-1 [Shanks Aff.] ¶ 12.)

Viewing the evidence in the light most favorable to Plaintiff, a reasonable jury could find Plaintiff was not restored to the position of employment he held when his leave commenced or

that he was not restored to an equivalent position with equivalent employment benefits, pay, and other terms and conditions. 29 U.S.C. § 2614 (a)(1)(A)-(B). In sum, Plaintiff alleges he did not have the same job title and that he was otherwise humiliatingly stripped of his office and ability to work. In addition, Plaintiff has further grounds for interference in alleging he was terminated as a result of taking leave. Plaintiff was officially terminated one week after this occurrence, on April 23, 2015. (Doc. 66-10 [Separation Notice].) Plaintiff has established a prima facie case.

Defendant next argues Shanks otherwise had legitimate, non-discriminatory reasons for Plaintiff's termination. Plaintiff argues the reasons proffered for Plaintiff's termination are pretextual.

### b. Reason for Discharge and Pretext

 "[A] plaintiff's success in establishing her prima facie case does not create a strict liability regime for employers, who may offer 'a legitimate reason unrelated to the exercise of FMLA rights for engaging in the challenged conduct.'" *Id.* (citing *Jaszczyszyn v. Advantage Health Physician Network*, 504 F. App'x 440, 447 (6th Cir. 2012)). There is no violation of a plaintiff's FMLA rights if the employer has a legitimate reason for engaging in the challenged conduct. *Id.*

While Defendant proffered a legitimate reason for terminating Plaintiff, the Court analyzed pretext in Part C.2, *supra*, finding Plaintiff has presented sufficient facts indicating that the reason proffered by Defendant was merely pretextual.

The Court will **DENY** Defendant's motion for summary judgment as to Count Three, interference in violation of the FMLA.

### B. FMLA Retaliation

To establish a prima facie case of FMLA retaliation, Plaintiff must show

(1) that "he availed himself of a protected right under the FMLA by notifying [his employer] of his intent to take leave," (2) that "he was adversely affected by an

employment decision . . . ," and (3) "a causal connection between his exercise of a right under the FMLA and the adverse employment decision."

*Gipson v. Vought Aircraft Indus., Inc.*, 387 F. App'x 548, 557 (6th Cir. 2010) (quoting *Skrjanc v. Great Lakes Power Serv. Co.*, 272 F.3d 309, 314 (6th Cir. 2001)).

As compared to an interference claim, in which a plaintiff alleges an employer burdened or denied rights under the FMLA, a retaliation claim alleges that an employer initiated an adverse employment action *because of* the employee's exercise of the right to take FMLA leave. *Russell v. CSK Auto Corp.*, No. 17-1961, 2018 WL 3159146, at *2 (6th Cir. June 27, 2018). "An employer's motive is relevant in a retaliation claim 'because retaliation claims impose liability on employers that act against employees specifically because those employees invoked their FMLA rights.'" *Id.* (quoting *Seeger v. Cincinnati Bell Tel. Co.*, LLC, 681 F.3d 274, 282 (6th Cir. 2012)).

Defendant argues summary judgment is appropriate as to Plaintiff's claim of retaliatory discharge in violation of the FMLA because Plaintiff did not provide notice of his intent to exercise his rights under the FMLA. (Doc. 46 at 28-29.) For the reasons outlined in Part D.1.a.1, *supra*, the Court finds a genuine dispute of material fact as to whether Plaintiff provided notice of intent to exercise his rights under the FMLA.

Defendant also argues Plaintiff has failed to identify a genuine issue of material fact as to a causal connection between his FMLA leave request and subsequent termination. (*Id.*) Plaintiff responds by relying on similar arguments as presented addressing Plaintiff's FMLA interference claim. (Doc. 66 at 20-22.) For the reasons outlined in Part D.1.a.2., *supra*, the Court finds a genuine dispute of material fact as to a causal connection between Plaintiff's leave request and subsequent termination.

In addition, Plaintiff has presented facts showing Defendant acted against him specifically *because* he invoked his FMLA rights—that is, that Defendant retaliated against him. *Russell*, 2018 WL 3159146, at *2. As to the factual timeline, Plaintiff was ejected from his office one day after returning from leave, and was terminated one week later. Shanks also sent a text message to Plaintiff the night before he was terminated stating, "go ahead and take off until your cruise. We've got it covered and OBVIOUSLY you need the rest." (Doc. 66-1 [Shanks Aff.] at 41.) A reasonable jury could find Shanks's comment about needing rest to be a specific reference to Plaintiff's leave. Shanks, herself, has also been inconsistent in offering an explanation for Plaintiff's termination. She testified in her deposition that she decided to terminate Plaintiff after he did not respond to her text message, but then later testified she decided to terminate him before she sent the text. (Doc. 66-1 [Shanks Aff.] at 44.) These facts further support a finding that Defendant's proffered reason for terminating Plaintiff was pretextual.

Because Defendant presents no other arguments not already addressed in regard to Plaintiff's interference claim, the Court will **DENY** Defendant's motion for summary judgment as to Count Four, retaliation in violation of the FMLA.

## IV. <u>CONCLUSION</u>

In conclusion, the Court will **GRANT IN PART and DENY IN PART** Defendant's motion for summary judgment (Doc. 43). The Court will **GRANT** Defendant's motion for summary judgment as to Plaintiff's retaliatory discharge claims under the First and Fourteenth Amendments to the United States Constitution and under Tennessee common law. The Court will also **GRANT** Defendant's motion on Plaintiff's disability discrimination claim in violation of the Americans with Disabilities Act Amendments Act. The Court will **DENY** Defendant's motion for

summary judgment as to Plaintiff's claims for retaliatory discharge under the Tennessee Public

Protection Act and for interference and retaliation under the Family and Medical Leave Act.


**An appropriate order will enter.**


**/s/**_____
**CURTIS L. COLLIER**
**UNITED STATES DISTRICT JUDGE**